IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 21-250 |
| JACOB ROBOTIN<br>a/k/a "Josie" | : | |

GOVERNMENT'S SENTENCING MEMORANDUM

On December 31, 2020, defendant Jacob Robotin a/k/a "Josie," illegally possessed a Molotov cocktail in Philadelphia. For the reasons provided below, the government submits that a sentence within the Sentencing Guidelines range of 24 to 30 months is the appropriate sentence in this case.

I. **INTRODUCTION**

The government submits this memorandum in advance of the sentencing hearing scheduled for August 18, 2022. A grand jury returned an indictment on June 29, 2021, charging Robotin with one count of possessing an unregistered firearm (a destructive device), in violation of 26 U.S.C. § 5861(d). On April 28, 2022, Robotin entered an open plea of guilty to the indictment.

II. **SENTENCING CALCULATION**

A. Maximum Sentence

Count One (possessing an unregistered firearm): 10 years' imprisonment, a three-year term of supervised release, a $250,000 fine, and a $100 special assessment.

If supervised release is revoked, the original term of imprisonment may be increased by up to two years on Count One. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original

sentence, plus an additional period of imprisonment without credit for time already spent on supervised release.

### B. Sentencing Guidelines Calculation

The Probation Office correctly calculated Robotin's Total Offense Level at 17 and her Criminal History Category as I, resulting in a Sentencing Guidelines range of 24 to 30 months' imprisonment. Robotin did not file any objections to these calculations. The details of the calculation are as follows:

| | | |
|---|---|---|
| Base Offense Level: | (USSG § 2K2.1(a)(5)) | 18 |
| Stolen Firearm: | (USSG § 2K2.1(3)(B) | + 2 |
| Acceptance of Responsibility: | (USSG § 3E1.1(a) & (b)) | - 3 |
| Total: | | 17 |
| Criminal History Category: | | I |
| Sentencing Guideline Imprisonment Range: | | 24-30 months |

## III. SENTENCING ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public

from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

    A.   <u>Nature and Circumstances of the Offense and History of the Defendant.</u>

On December 31, 2020 at 8:27 p.m., Philadelphia Police Department ("PPD") officers responded to reports of spray painting, breaking windows, lighting fireworks, and other vandalism by a large group of young people wearing dark clothing in the area of 7th and Market Streets in Philadelphia. PSR ¶ 7. Shortly thereafter, PPD officers observed three individuals, Jacob Dean Robotin, Person #1, and Person #2 – all of whom appeared to be members of the group described above – walking together at 7th and Chestnut Streets. When Robotin, Person #1, and Person #2 reached 600 Sansom Street, PPD officers stopped the group for further investigation. PSR ¶ 9.

PPD officers noticed that Robotin had a green, military-style backpack and was wearing dark clothing with apparent spray paint on it. (Robotin was actually wearing camouflage pants designed with simulated paint stains). When asked by PPD officers what they were doing, Robotin, Person #1, and Person #2 stated that they were coming back from dinner. Other PPD officers then arrived at 600 Sansom Street and identified Robotin, Person #1, and Person #2 as being among the larger group, which had members participating in the vandalism of the Nix Building earlier in the evening. Based on the totality of evidence, PPD officers placed Robotin, Person #1, and Person #2 under arrest, although they were not handcuffed. PSR ¶ 9. All three

individuals, including Robotin, were wearing backpacks, which the officers searched. PSR ¶ 10.

While Robotin, Person #1, and Person #2 were still nearby, PPD officers searched the backpacks of Robotin, Person #1, and Person #2. PSR ¶ 10. Inside Robotin's backpack, PPD officers found a destructive device consisting of a glass bottle containing liquid and fuses taped to the bottle, as pictured below:



In addition, PPD officers found inside Robotin's backpack a strip of small firecrackers, one circular firework, and camping heat sources. Thereafter, PPD officers notified PPD's Bomb Disposal Unit and the Fire Marshall. PPD's Bomb Disposal Unit took custody of the destructive device and other items. They were later transferred into the custody of the FBI. PSR ¶ 10.

The FBI Laboratory in Quantico, Virginia determined that the glass bottle pictured above contained gasoline, an ignitable liquid. The FBI Laboratory made the following determination regarding Robotin's glass bottle containing gasoline with taped fuses:

> It is the opinion of this Explosives and Hazardous Device Examiner that within the aforementioned submitted specimens are the disassembled remains of one (1) Improvised Incendiary Device (IID), also known as a homemade firebomb, or Molotov cocktail. The IID consists of one (1) glass bottle containing an ignitable liquid and one (1) non-electric fuzing system (Hobby Fuse) serving as a wick and heat source. The hobby fuse in this

IID may be initiated by any common ignition source, such as a match, lighter flame, or other heat source. The IID is then typically thrown at an intended target, shattering on impact, and enveloping the intended target in flames. Properly assembled and initiated, this type of IID is capable of inflicting property damage, personal injury, or even death.

PSR ¶ 11. Accordingly, Robotin's glass bottle containing gasoline with taped fuses was a firearm, as defined in 26 U.S.C. § 5845(a)(8) & (f).

According to the ATF, Robotin has not applied for nor obtained a registration of any firearms with the National Firearms Registration and Transfer Record, as Robotin was required to do so for this firearm pursuant to 26 U.S.C. § 5841. PSR ¶12. Robotin knew of the specific characteristics or features of the firearm that made it subject to registration under the National Firearms Registration and Transfer Record, namely that it was a destructive device. However, Robotin has no criminal history. PSR ¶¶ 28-34.

    B.  The Need to Reflect the Seriousness of the Offenses, Promote Respect for the Law, Provide Just Punishment and Adequate Deterrence, and Protect the Public.

Considering the nature of the offense, a Guidelines sentence is the best way to satisfy these goals of 18 U.S.C. §3553(a). While the government is not greatly concerned with specific deterrence for this defendant, there is a need to deter others from possessing these types of dangerous devices. To be sure, as conceded in Robotin's sentencing memorandum, a single Molotov cocktail is capable of seriously injuring or killing others. Still, it is troubling that Robotin appears to claim that her possession of the Molotov cocktail was intended "actually for vandalism or for bonfires and parties." Robotin Memorandum at 6. Indeed, Philadelphia is already in the midst of a violent crime crisis. The last thing the city needs is individuals possessing or using these devices, which are designed to inflict mass casualties.

    C.  The Need to Provide the Defendant with Medical Care or Education.

There is a need to provide Robotin with mental health and substance abuse treatment. PSR

¶¶ 54-60. A term of supervised release will also be beneficial for these purposes. Accordingly, there is no need to alter Robotin's sentence to provide for this treatment.

    D.   <u>The Need to Prevent Unwarranted Sentencing Disparities.</u>

The government is respectfully recommending a sentence within the Sentencing Guidelines range of 24 to 30 months. Based upon the nature of the offenses and the characteristics of the defendant, this sentence is appropriate for this crime and does not present any risk of unwarranted sentencing disparities.

## IV.   CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a sentence within the Sentencing Guidelines range of 24 to 30 months.

                                      Respectfully submitted,

                                      JACQUELINE C. ROMERO
                                      United States Attorney

                                      <u>/s Vineet Gauri</u>
                                      Vineet Gauri
                                      Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing memorandum was sent by electronic mail and ECF to:

>Marni Jo Snyder, Esq.
>marni@snyderlawyer.com

>/s Vineet Gauri
>Vineet Gauri
>Assistant United States Attorney

Date:   August 11, 2022